**Greg and Mary BOONE,
Plaintiffs–Appellees,**

v.

**BOARD OF COUNTY COMMIS-
SIONERS, Elbert County,
Defendant–Appellant.**

No. 03CA1850.

Colorado Court of Appeals,
Div. V.

Dec. 16, 2004.

Rehearing Denied Jan. 20, 2005.

John Kokish, PC, John Kokish, Shannon L. Meddings, Castle Rock, Colorado, for Plaintiffs–Appellees.

Berg, Hill, Greenleaf & Ruscitti, LLP, Josh A. Marks, Heidi C. Potter, Boulder, Colorado, for Defendant–Appellant.

WEBB, J.

In this land use dispute, defendant, Elbert County Board of County Commissioners, appeals the trial court's partial summary judgment in favor of plaintiffs, Greg and Mary Boone, declaring Elbert County's rezoning regulations for parcels between 35 and 59.99 acres illegal on their face. We reverse and remand.

The following facts are undisputed. The Boones owned a tract of approximately 143 acres, which they divided into 4 separate parcels by quitclaim deeds. Each of the 4 parcels was more than 35 acres.

In Elbert County, lots greater than 60 acres are zoned Agriculture (A); lots between 35 and 59.99 acres are zoned Agriculture-one (A–1). Elbert County Zoning Regulations, pt. I, § 1(J)(1). Lots zoned as A enjoy uses permitted by right that are not afforded to A–1 lots. Elbert County Zoning Regulations, pt. II, § 2(B). For lots zoned A–1, these uses are permitted only by special review. Elbert County Zoning Regulations, pt. II, § 3(c).

Shortly after the quitclaim deeds were recorded, the Elbert County Planning Department wrote to the Boones stating that they "had created one or more illegal parcels" and that the county would not issue building permits "for the illegal parcel(s) until [the Boones] have applied, and received approval for, the appropriate land use application(s)." The Boones were not then seeking a building permit.

Instead of applying for rezoning, the Boones brought this action asserting three claims for relief. In the first claim, they sought a judgment declaring the A–1 rezoning regulations "illegal and not enforceable, and superceded by [§ 30–28–101(10)(b), C.R.S.2004]," which precludes application of subdivision regulations to divisions of property resulting in parcels of 35 acres of more. In the second claim, they sought to enjoin the Board's enforcement of the rezoning regulations by refusing to issue building permits as in excess of its jurisdiction and an abuse of discretion. The third claim sought damages for an unconstitutional taking under 42 U.S.C. § 1983.

The parties filed cross-motions for summary judgment on the first claim and a stipulation of facts. Initially, the trial court denied the motions, explaining, "The pleadings do not clearly demonstrate what the County may choose to attempt to do with respect to zoning. Whether any attempt to rezone property would be a ruse for subdivision regulation is not yet adequately developed."

The parties jointly moved for reconsideration. They stated that the county had informed the Boones that it would not issue a building permit until they had obtained rezoning for their land and that, because the Boones "have not requested any zoning changes," they were not bringing an "as applied challenge to the county's authority, which could create the factual disputes referenced by the court in its prior summary judgment ruling."

The court then entered partial summary judgment for the Boones on the basis that § 30–28–101(10)(b) exempts from subdivision regulation parcels of 35 or more acres. After the court certified its partial summary judgment as final under C.R.C.P. 54(b), the Board appealed.

## I.

Summary judgment is appropriate where no genuine issue of material fact exists. *Dunne v. Shenandoah Homeowners Ass'n,* 12 P.3d 340 (Colo.App.2000). Here, because the parties agree that the facts concerning this claim are undisputed, we review the summary judgment in the same manner as did the trial court. *Dunne v. Shenandoah Homeowners Ass'n, supra.*

Statutory interpretation is a question of law that appellate courts review de novo. *Bontrager v. La Plata Elec. Ass'n,* 68 P.3d 555 (Colo.App.2003). When construing statutes, a court's primary purpose is to effectuate the intent of the General Assembly. To determine that intent, courts first look to the statutory language, giving words and phrases their commonly accepted meaning. *Archibold v. Pub. Utils. Comm'n,* 58 P.3d 1031 (Colo.2002).

When several statutes apply to the same subject matter, courts examine all relevant provisions to determine the intent of the General Assembly. *Bontrager v. La Plata Elec. Ass'n, supra.* Courts must reconcile potentially conflicting statutes relating to the same subject matter, if possible, to avoid an inconsistent or absurd result. *Bodelson v. City of Littleton,* 36 P.3d 214 (Colo.App. 2001). Courts will not adopt a statutory construction that defeats the intent of the General Assembly. *State v. Nieto,* 993 P.2d 493 (Colo.2000).

## II.

■ The Board contends the trial court erred in applying the 35–acre subdivision exemption to invalidate on their face the county's rezoning regulations for parcels between 35 and 59.99 acres. We agree.

■ Local governments employ several methods of regulating land use within their jurisdictions, including master plans, zoning regulations, and subdivision regulations. *Bd. of County Commr's v. Conder,* 927 P.2d 1339 (Colo.1996). Zoning and subdivision regulations are separate and distinct types of controls that serve different purposes: zoning regulations limit the current use of land, while subdivision regulations restrict transferability and plan for future use involving a platted subdivision. *See Bd. of County*

*Commr's v. Bainbridge, Inc.,* 929 P.2d 691 (Colo.1996).

■ The authority to promulgate subdivision regulations is in addition to the general authority given to counties to adopt zoning regulations. *Beaver Meadows v. Bd. of County Commr's,* 709 P.2d 928 (Colo.1985). Hence, a subdivider must first satisfy applicable zoning regulations and then additionally comply with the subdivision regulations. *Shoptaugh v. Bd. of County Commr's,* 37 Colo.App. 39, 543 P.2d 524 (1975).

Section 30–28–111(1), C.R.S.2004, gives a county broad authority to enact zoning regulations:

> The county planning commission of any county may ... make a zoning plan for zoning all or any part of the unincorporated territory within such county ... for the regulation by districts or zones of the location, height, bulk, and size of buildings and other structures, percentage of lot which may be occupied, *the size of lots,* courts, and other open spaces, the density and distribution of population, the location and use of buildings and structures for trade, industry, residence, recreation, public activities, or other purposes, access to sunlight for solar energy devices, and the uses of land for trade, industry, recreation, or other purposes.

(Emphasis added.) To enforce zoning regulations, the county may withhold building permits. Section 30–28–114, C.R.S.2004.

Section 30–28–133, C.R.S.2004, requires every county planning commission to develop, propose, and recommend subdivision regulations. However, § 30–28–101(10)(b) provides an exemption from subdivision regulation:

> The terms "subdivision" and "subdivided land" ... shall not apply to any division of land which creates parcels of land each of which comprises thirty-five or more acres of land and none of which is intended for use by multiple owners.

Thus, § 30–28–133 only authorizes subdivision regulations controlling parcels of land smaller than 35 acres. *Pennobscot, Inc. v. Bd. of County Commr's,* 642 P.2d 915 (Colo. 1982).

The Boones argue that this exemption precludes the Board from requiring a landowner to rezone a parcel between 35 and 59.99 acres that arises from division of a larger tract. We disagree.

The plain language of § 30–28–101(10)(b) applies only to subdivision regulations. The General Assembly specifically defined the term subdivision as "any parcel of land ... which is to be used for ... multiple-dwelling units ... or which is divided into two or more parcels, separate interests, or interests in common, *unless exempted under paragraph (b)* ... *of this subsection (10).*" Section 30–28–101(10)(a), C.R.S.2004 (emphasis added).

The General Assembly did not provide a parallel exemption from a county's zoning regulations. During oral argument, both parties agreed that the legislative history of § 30–28–101(10)(b) does not indicate an intent to limit county zoning powers. Moreover, county zoning authority expressly includes the power to regulate use based on lot size. Section 30–28–111(1).

Here, when the Boones divided their land, the new parcels no longer met the requirements for A zoning. Thus, they needed to be rezoned according to the A–1 zoning regulations for smaller parcels.

█ Nevertheless, the Boones argue that the county's A–1 zoning regulations are unenforceable because they improperly restrain alienability, based on the statement in *Pennobscot, supra,* that the 35–acre subdivision exemption prevents subdivision regulation from operating as a restraint on alienability. We are not persuaded.

Initially, we note that a county's statutory zoning enforcement powers do not include enjoining or invalidating conveyances. Section 30–28–114. The "A–1 Rezoning Procedure" does not purport to invalidate a conveyance that divides a larger tract zoned A into smaller parcels subject to A–1 zoning. Elbert County Zoning Regulations, pt. I, § 6(c). In contrast, the Elbert County Subdivision Regulations, § I(I), empowers the Board to enjoin a transfer of land made before the plan or plat has been approved. And the Boones do not assert that they are precluded from transferring their land by the planning department's letter that they "created one or more illegal parcels," which does not appear to be of record.

The explanation for the 35–acre subdivision exemption stated in *Pennobscot* does not persuade us to infer the same exemption from rezoning. The *Pennobscot* court did not cite to legislative history supporting this explanation. Further, because zoning authority can be exercised on the basis of lot size under § 30–28–111(1), interpreting the 35–acre subdivision exemption as an implied limitation on this power would defeat the express intent of the General Assembly. *See McIntosh v. Bd. of Educ.,* 999 P.2d 224 (Colo.App.2000)(conflicts between relevant provisions are to be avoided).

█ In this regard, the Boones further argue that to obtain rezoning, they must pay a variety of fees. However, they cite no authority, and we have found none, prohibiting a county from imposing reasonable fees in connection with rezoning. *Cf. City of Commerce City v. Cooper,* 198 Colo. 553, 609 P.2d 106 (1979)(upholding reasonable fee for building permit). Nor does the record include evidence that these fees are unreasonable. *See Hopkins v. Bd. of County Comm'r's,* 193 Colo. 230, 564 P.2d 415 (1977)(lack of evidence that fee unreasonable required affirmance). And despite the prospect of having to pay these fees, the Boones divided their land.

Accordingly, we conclude the 35–acre subdivision exemption does not alone render the county's A–1 rezoning regulations invalid on their face.

### III.

█ The Boones also contend that, because of overlap between Elbert County's rezoning regulations and its subdivision regulations, the Board is indirectly imposing otherwise prohibited subdivision regulations by requiring rezoning when a tract is divided into parcels of 35 acres or more. We conclude this issue cannot be resolved by summary judgment on the record presently before us.

The Boones offer as specific examples of overlapping, and therefore allegedly unlawful indirect subdivision regulation, such rezoning

**1118**

requirements as: proof of ownership; comment about emergency access; covenant compliance; road permit; land survey plat; and a narrative. The narrative must address subjects such as: relationship to adjacent property land uses; compliance with the Elbert County Master Plan; sources of water; methods of wastewater treatment and disposal; confirmation of service from a water sanitation district; type of fire protection; impacts on county services; impacts on existing flora and fauna, air quality, wildlife, historical lands, drainage, or mineral extraction; and a weed control and grazing plan. Comparable requirements appear in the subdivision regulations.

However, the record does not inform us whether these parallel requirements are similarly interpreted or enforced. Moreover, from this sparse record, we cannot determine whether, on the one hand, any of the overlapping A–1 rezoning requirements, either as written or as interpreted, reasonably further lawful zoning objectives, see *Bd. of County Commr's v. Thompson*, 177 Colo. 277, 493 P.2d 1358 (1972), or, on the other hand, they can be justified, if at all, only as furthering the purposes for subdivision regulation. *See* § 30–28–133. In our view, this issue raises a mixed question of law and fact. *Cf. City of Boulder v. Fowler Irrevocable Trust 1992–1*, 53 P.3d 725 (Colo.App.2002).

Inevitably, both zoning and subdivision regulations will have some similar requirements, such as proof of ownership. Thus, the partial summary judgment invalidating the rezoning requirements on their face cannot be sustained merely because some of the rezoning requirements duplicate requirements for subdivision approval.

Moreover, a piecemeal analysis of allegedly overlapping rezoning requirements may be more appropriate in an as-applied challenge, which the parties' joint motion for reconsideration disclaims. Indeed, the trial court initially concluded that the record did not permit it to determine whether rezoning is "a ruse for subdivision regulation." Hence, on remand the trial court may consider, in its discretion, allowing the Boones to amend their complaint to assert an as-applied challenge to the A–1 rezoning regulations.

Finally, we note the Board urges that we direct the trial court to grant its cross-motion for summary judgment. However, as discussed above, we perceive factual issues concerning the overlap between zoning regulations and subdivision regulations that at this time also preclude entry of partial summary judgment for the Board.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge DAILEY and Judge CARPARELLI concur.