**SENATOR ALICIA "CHUCKY" HANSEN, Petitioner**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY AND PUBLIC SERVICES COMMISSION, Respondent**

SX-11-CV-364

Superior Court of the Virgin Islands

Division of St. Croix

January 12, 2012

GEORGE H. HODGE, JR., ESQ., St. Thomas, USVI, *Attorney for Petitioner*.

AMELIA B. JOSEPH, ESQ., Christiansted, USVI, *Attorney for Petitioner*.

SAMUEL H. HALL, JR., ESQ., Hall & Griffith, P.C., St. Thomas, USVI, *Attorney for Respondent Virgin Islands Water and Power Authority*.

BOYD L. SPREHN, ESQ., Watts, Benham & Sprehn, P.C., St. Thomas, USVI, *Attorney for Respondent Public Service Commission*.

TANISHA BAILEY-ROKA, ESQ., General Counsel, Public Services Commission, St. Croix, USVI.

WILLOCKS, *Judge*

## MEMORANDUM OPINION

(January 12, 2012)

**THIS MATTER** is before the Court on Petitioner Alicia "Chucky" Hansen's (hereinafter Petitioner) Petition of Appeal, filed August 10, 2011.[1] Petitioner appeals the denial by the Virgin Islands Public Service Commission (hereinafter the PSC or Commission) of her Petition for Reconsideration of Order 38/2011. For the reasons stated below, the Court

---

[1] Hansen is an ex-officio of the PSC.

shall dismiss the following issues on appeal: (1) The Virgin Islands Water and Power Authority, (hereinafter WAPA) has failed to comply with the legislative mandate that required it to have conducted a public hearing for comment within a reasonable time after the creation of the LEAC, and (2) WAPA's Petition for increase should not be based on the fluctuation of oil prices on the market and the refinancing of its $40 million loan; but, rather, WAPA's request should have been based on the below market prices provided by HOVENSA, which is not indicated in its petition for an increase (based on the Third Extension and Amended Agreement). The Court shall remand the third issue — whether the PSC had insufficient information to consider the interest payments on WAPA's loans as a factor to increase the LEAC — to the Commission for an appropriate Finding.

## FACTS AND PROCEDURAL BACKGROUND

On June 24, 2011, the PSC issued Order No. 38/2011 in Docket No. 289, approving the increase of the Levelized Energy Adjustment Clause (hereinafter referred to as the LEAC) rates for the period of July 1 through September 30, 2011. In 1989, the PSC — in an attempt to address the increases and shifts in oil prices — opened docket 289, which created the LEAC. The LEAC is a fuel cost recovery method employed by WAPA to counter the shifts in the prices of crude oil. Each customer is billed for the cost of fuel required to generate electricity and water according to their actual consumption. The level of the LEAC is adjusted on a quarterly basis to allow for quick recovery of fuel cost if the price of fuel rises too high or to give credits to the public in the event fuel prices are lower than projected. The Legislature of the U.S. Virgin Islands has never authorized a LEAC charge; and, as such, there is no legislation governing this rate charge. The configuration of rates such as the LEAC is a task apportioned solely to the PSC.[2]

On June 29, 2011, Petitioner filed a timely "Request Stay and Reconsideration for the Order Approving LEAC Rates for the Period of July 1 Through September 30, 2011."[3] On July 1, 2011, the PSC issued

---

[2] The issue as to whether the PSC can establish a LEAC was not raised in the Petition for Reconsideration and therefore is not before this Court.

[3] It was served upon the PSC on June 30, 2011.

28

an amended agenda, setting a meeting date for July 12, 2011 at 5:00 p.m. Included on the agenda was Petitioner's Request Stay and Reconsideration for the Order Approving LEAC Rates for the Period of July 1 Through September 30, 2011. On July 7, 2011, WAPA filed an Objection and an Opposition thereto. Neither Petitioner nor any of her representatives appeared at the July 12, 2011 meeting. The PSC heard testimony from Hugo Hodge, Director of WAPA, on the increase of the LEAC. On July 13, 2011, Attorney George Hodge filed a letter to the PSC on Petitioner's behalf requesting that the hearing be rescheduled because of the untimely death of Petitioner's brother on July 11, 2011. In the correspondence to the PSC, Attorney Hodge also noted his appearance as counsel for Petitioner. The PSC denied Petitioner's request for Reconsideration by Order 39/2011 dated July 15, 2011. Petitioner's request for a rescheduling of the hearing was also denied. Petitioner filed a timely Petition of Appeal with the Court on August 10, 2011. Thereafter, an Amended Petition of Appeal was filed on August 30, 2011, requesting that the Court sustain Petitioner's Appeal and to vacate the July 15, 2011 Order by the PSC.[4]

## DISCUSSION

### Standard of Review

■ This Court has jurisdiction to hear this appeal pursuant to Title 30 V.I.C. § 34. The Court is cognizant that the Legislature in the establishment of the PSC has by statute required that the courts must view the actions of the PSC as *omnia praesumuntur legitime facta donec probetur in contrarium* (all things are presumed to be lawfully done until it is shown to be in the reverse). This is adverted to by Title 30 V.I.C. § 35 which limits the Courts' powers on appeal from an order or decision of the PSC. Title 30 V.I.C. § 35 provides that:

---

[4] The procedural postulate in which an action against the PSC reaches the Court is codified in Title 30 of the Virgin Islands Code. Upon a final order or decision of The Virgin Islands Public Services Commission (hereinafter, "PSC"), anyone affected by the order has thirty (30) days after the publication of the decision to file a Petition for Reconsideration. Title 30 V.I.C. § 33. After a Petition for Reconsideration is filed with the PSC, the PSC has thirty (30) days to grant, deny, or take no action on the petition. After a final determination is made upon the Petition for Reconsideration, an Appeal may be filed within sixty (60) days in the Superior Court of the United States Virgin Islands setting forth the reasons for such appeal and the relief sought. *See* Title 30 V.I.C. § 34.

In the determination of any appeal from an order or decision of the Commission the review by the court shall be limited to questions of law, including constitutional questions; and the findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are arbitrary, capricious or procured through fraud.

According to Title 30 V.I.C. § 33, the Court is limited to the issues raised in the Petition for Reconsideration. These issues are restricted to the Court's determination as to whether the PSC acted in an arbitrary or capricious manner or whether the decision on the issues was based through fraud. The Court's review is also restricted to questions of law, including constitutional questions.

The issues raised by Petitioner are of such that this Court does not have the authority or the power to be the slayer of the LEAC as was foretold. The issue raised by Petitioner in her Petition for Reconsideration was three-fold.

WAPA failed to comply with the legislative mandate that required it to conduct a public hearing for comment within a reasonable time after the creation of the LEAC.

The Virgin Islands Water and Power Authority's (WAPA) petition for an increase should not be based on the fluctuation of oil prices on the market and the refinancing of its $40 million loan. But, rather, WAPA's request should have been based on the below market prices provided by HOVENSA, which is not indicated in its petition for an increase (based on the Third Extension and Amended Agreement).

The PSC had insufficient information to consider the interest payments on WAPA's loan as a factor to increase the LEAC.[5]

## I. WAPA HAS FAILED TO COMPLY WITH THE LEGISLATIVE MANDATE THAT REQUIRED IT TO HAVE CONDUCTED A PUBLIC HEARING FOR COMMENT WITHIN A REASONABLE TIME AFTER THE CREATION OF THE LEAC

██ Petitioner argues that "WAPA has failed to comply with the Legislative mandate that required it to have conducted a public hearing

---

[5] The order in which they appear is of no significance.

for comment within a reasonable time after the creation of the LEAC" pursuant to Title 30 V.I.C. § 105(12). Petitioner also argues that the creation of the LEAC brought changes to the general rate structure for water and power, and therefore required a public hearing pursuant to Title 30 V.I.C. § 105(12).[6] Petitioner's arguments are flawed. It has been firmly established that the Virgin Islands Public Services Commission (PSC) has power over the Virgin Islands Water and Power Authority (WAPA) with respect to rate setting. The Virgin Islands Legislature created WAPA as a "public corporation and autonomous governmental instrumentality" in 1964.[7] The Legislature also created a governing board for WAPA for the purpose of developing and providing water and electric power services for the people of the Virgin Islands.[8] *Ab initio*, WAPA had the unregulated authority to set its own rates while the PSC acted in an advisory role with respect to the rate-setting of WAPA; hence, the requirement for the Board to have a public meeting prior to any rate increases. However, this changed with the enactment of Title 30 V.I.C. § 1(c).[9] On October 17, 1973, then Attorney General Verne A. Hodge in a published opinion held that the PSC had jurisdiction over WAPA for rate-setting purposes.[10] Attorney General Hodge's opinion was reinforced by the District Court in *PSC v. WAPA*, Civ. No. 77/110 (D.V.I. 1977). In that case, the Court held that the power of the PSC is "limited in its power to fix rates as provided in Title 30 V.I.C. §§ 1(c)." *Id.* In 1980, Title 30 V.I.C. § 122 was amended to provide in relevant part that:

> Nothing shall be construed as exempting the Virgin Islands Water and Power Authority from any law made specifically applicable thereto or generally applicable to the independent instrumentalities of the Government. . . .

---

[6] Title 30 V.I.C. § 105(12) states in pertinent part:
> before changes in such general rate structure for water or electric power are made, or, in cases where the Board shall decide to make such changes and deems the immediate effectiveness thereof to be necessary, then within a reasonable time after such changes are made, a public hearing shall be held with respect thereto before the Board . . .

[7] *See* V.I. CODE ANN. tit. 30 §§ 103, 105. For a more comprehensive history of WAPA see *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478 (V.I. Super. 2008).

[8] *Ibid.*

[9] The rates for public utility service supplied by the government shall be fixed, unless fixed by law, in the same manner as rates for public utility services furnished by a private entity.

[10] *See* 7 V.I. Op. Att'y Gen. 196 (1973).

 Decisively, the Supreme Court, in *V.I. Pub. Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478 (V.I. Super. 2008) held that the PSC has the authority and the power to set WAPA's rates. In setting rates, the Commission holds public meeting before any rate increase. *Ergo*, it would be nonsensical for the WAPA Board to be required to have a public meeting when it is no longer responsible for the setting of its rates.

## II. THE VIRGIN ISLANDS WATER AND POWER AUTHORITY (WAPA) PETITION FOR INCREASE SHOULD NOT BE BASED ON THE FLUCTUATION OF OIL PRICES ON THE MARKET AND THE REFINANCING OF ITS $40 MILLION LOAN, BUT RATHER WAPA'S REQUEST SHOULD HAVE BEEN BASED ON THE BELOW MARKET PRICES PROVIDED BY HOVENSA, WHICH IS NOT INDICATED IN ITS PETITION FOR AN INCREASE (BASED ON THE THIRD EXTENTION AND AMENDED AGREEMENT)

Petitioner contends that "The Virgin Islands Water and Power Authority's (WAPA) petition for an increase should not be based on the fluctuation of oil prices on the market and the refinancing of its $40 million loan. But, rather, WAPA's request should have been based on the below-market prices provided by HOVENSA, which is not indicated in its petition for an increase (based on the Third Extension and Amended Agreement)."

 In essence, Petitioner is asking this Court to substitute its judgment for that of the PSC. This would be a violation of Virgin Islands law. This Court, as it has stated before, can only review the actions of the PSC within a small window. That window being that the findings of fact by the Commission shall be conclusive unless it appears that the finding are arbitrary, capricious, or procured through fraud. Title 30 V.I.C. § 35.

 Title 30 V.I.C. § 8 gives the Commission considerable access to WAPA's (as well as other public utilities) confidential information. It states in pertinent part:

> Each public utility shall furnish to the Commission in such form and at such time as the Commission shall require, such accounts, reports, and information as shall show in itemized detail: Depreciation; salaries and wages; legal expenses; taxes and rentals; quantity and value of material used; receipts from residuals, by-products, services or other sales; total and net costs; net and gross profits; dividends and

interest; surplus or reserve; prices paid by consumers; and in addition such other items, whether of a nature similar to those hereinbefore enumerated or otherwise, as the Commission may prescribe, in order to show completely and in detail the entire operation of the public utility in furnishing its product or service to the public.

Similarly, Title 30 V.I.C. § 16 gives the Commission further access to WAPA's confidential information. It states in relevant part:

The Commission or any member thereof or any person or persons employed by the Commission for that purpose shall, upon demand, have the right to inspect the books, accounts, papers, records, and memoranda of any public utility, and to examine, under oath, any officer, agent, or employee of such public utility in relation to its business and affairs.

Finally, Title 30 V.I.C. § 23 gives the PSC the power to fix rates and services.[11]

---

[11] Title 30 V.I.C. § 23 provides in pertinent part:

(a) If upon such investigation the rates, tolls, charges, schedules, or joint rates shall be found to be unjust, unreasonable, insufficient, or unjustly discriminatory, or to be preferential or otherwise in violation of any of the provisions of this chapter, the Commission shall have power to determine and by order fix and order to be substituted therefor such rate or rates, charges, or schedules as shall be just and reasonable. If upon such investigation, it shall be found that any regulation, time schedule, act, or service, complained of is unjust, unreasonable, unsafe, inadequate, preferential, unjustly discriminatory, or otherwise in violation of any of the provisions of this chapter, or if it be found that reasonable service is not supplied, the Commission shall have power to determine and substitute therefor such other regulations, time schedule, service, or acts and to make such orders respecting any such changes in such regulations, time schedules, service, or acts as shall be just and reasonable. The Commission shall have power to fix, determine and require such extensions, expansions, or increases in facilities or service as the Commission finds are in the furtherance of the public convenience and necessity, and the terms and conditions upon which the same shall be made: provided, that no hearing shall be had and no order shall be made with respect thereto without notice to the public utility affected thereby, as provided in section 22 of this title.

(b) In exercising its authority to prescribe just and reasonable rates, the Commission shall provide a return of not less than six (6) nor more than eight (8) percent on the net investment in the property prudently acquired for and devoted to the public use, unless the Commission makes a special finding that a different return is imperative, so as to be fair to the consumer interest, and to be fair to the investor interest by providing a return commensurate with returns in other enterprises having corresponding risks, and which

33

■ Clearly, pursuant to statute, the PSC must make certain that the rate is just and reasonable. Furthermore, what is really telling here is that Title 30 V.I.C. § 23 does not give the Court the authority to determine if the rates were just and reasonable. Nor does Title 30, in its entirety, give the Court the authority to determine what information must be considered when fixing rates.

### III. THE PSC HAD INSUFFICIENT INFORMATION TO CONSIDER THE INTEREST PAYMENTS ON WAPA'S LOAN AS A FACTOR TO IN-CREASE THE LEAC

Petitioner argues that "the PSC had insufficient information to consider the interest payments on WAPA's loans as a factor to increase the LEAC." The Court disagrees.

The only loan costs WAPA has included in the LEAC are the note of $40 million and a line of credit. Information regarding both is detailed extensively in several documents provided in the Certified Record of Proceedings in Docket 289. In Record 14, Pages 10-12, and Record 20, Pages 14-17, the terms of the $40 million loan and line of credit are evidence as to when they were created, the interest rate on each, and their respective amortization periods.

Further, Title 30 V.I.C. § 35 explicitly states that "Findings of fact by the Commission shall be conclusive unless it shall appear that such findings of the Commission are arbitrary, capricious, or procured through fraud." Pursuant to Title 30 V.I.C. § 34, "within twenty days of the receipt of such notice of appeal, the Commission shall file with the clerk of said court the record, including a transcript of all proceedings had and testimony taken before the Commission, duly certified, upon which the said order or decision of the Commission was based, together with a statement of its findings of fact and conclusions upon the said record . . . ." Title 30 V.I.C. § 29 states that "a full and complete record shall be kept of all proceedings had before the Commission or its agents on any formal investigation had, and testimony shall be taken down by a stenographer . . . ."

■ The Court upon review of the record is compelled to review the record before the Commission. *See* Title 30 V.I.C. § 35. Thus, the Court

will assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital.

must make its determination not only on the findings of fact and conclusions, but, rather, on the entire record.

On appeal, a trial court reviews an agency's reasoning to determine whether it is "arbitrary" or "capricious" or, if bound up with a record-based factual conclusion, to determine whether it is supported by "substantial evidence." *Dickinson v. Zurko*, 527 U.S. 150, 164, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 89-93, 63 S. Ct. 454, 87 L. Ed. 626 (1943).

A trial court reviewing an administrative agency's decision may not re-weigh evidence, and the hearing officer's findings "with respect to questions of fact shall be considered conclusive if supported by substantial evidence on the record considered as a whole." Substantial evidence need not be "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove*, 181 F.3d 403, 408 (3d Cir. 1999) (citations omitted). To determine whether the evidence before an agency was substantial, a court views the record in its entirety and takes account of evidence unfavorable to the agency's decision. *Id.*

The Court is concerned about the cursory manner in which the PSC has written its Findings.[12] Black's Law Dictionary defines Findings

---

[12] The pertinent Findings are as follows:

*Background*

Whereas, on May 24, 2011, the Virgin Islands Water and Power Authority (hereinafter "WAPA" or the "Authority") filed a petition with the Virgin Islands Public Service Commission (hereinafter referred to as the "PSC" or "Commission") seeking approval of an increase to the Levelized Energy Adjustment Clause ("LEAC") rate for the electric department from the current rate $0.317389 per kWh to $0.359342 per KWh and an increase to the LEAC rate for the water department from the current rate of $9.87 per kgal to $15.47 per Kgal; and

WHEREAS, the Commission through its staff and consultants, conducted a thorough review, conducting discovery, held meetings with the executive management of the Authority concerning the proposed electric and water LEAC rates and submitted a report to the Commission on June 10, 2011; and

WHEREAS the Authority submitted updated information on its factual costs on June 13, 2011, that reflected a substantial increase in its invoiced delivered fuel oil costs for May and June 2011, due to volatile changes in world markets and the staff and consultants after consideration of his information from the Authority and consideration of other independent information on oil pricing provided the Commission an updated re-

35

of Fact[13] as "a determination by a judge, jury or administrative agency of a fact supported by the evidence in the record usually presented at trial or hearing." Thus, an administrative agency's Findings of Facts and Conclusions must be such, or at a bare minimum adequate enough for the reviewing court to understand the factual basis upon which the agency has reached its conclusion. *See Aggie Investment GP v. Public Service Commission of North Dakota*, 470 N.W.2d 805 (N.D. 1991). The Court in *Scalavenitis v. Cherry Hills Village Board of Adjustment and Appeal* stated:

> The findings of fact should be sufficient in content to apprise the parties and the reviewing court of the factual basis for an action taken so that the parties and the reviewing tribunal may determine whether the decision has support in evidence and in law. 751 P.2d 661 (Colo. App. 1988).

 Here, though the record when read is sufficient in its entirety, the Findings are woefully inadequate and cursory at best. Nowhere in the Commission's findings and Conclusions do they outline any specifics in which the Commission relied upon for their decision. As stated before, the findings of an administrative agency must be adequate enough for this court to discern the factual basis upon which the agency has reached its

---

port on June 13, 2011 with regard to proposed LEAC rates for electric and water departments as well as several recommendations for ongoing filing requirements for future LEACs; and

WHEREAS, on June 14, 2011, the Commission met in special session at its offices located at Barbel Plaza, St. Thomas, U.S. Virgin Islands.

*Commission Findings and Conclusions*

Having considered the petition of the Authority reports submitted by its staff and consultants and testimony of all parties, upon review and deliberation, the Commission voted to increase the electric department LEAC rate $0.36076 per kWh to $0.359342 per KWh and to increase the water department LEAC to $14.33

per Kgal, also reflecting recent volatility in world oil prices and the increase in involved fuel prices to the Authority, both LEAC rates to be effective on all bills rendered on or after July 1, 2011 through September 30, 2011; and

NOW THEREFORE, it is hereby

ORDERED by the Virgin Islands Public Service Commission that the findings of fact and conclusions of law herein be and the same are hereby approved in every respect. It is further. . . .

[13] Findings of Fact and Findings are the same as it applied to this case.

conclusion. *Aggie Investment GP*, 470 N.W.2d 805 (N.D. 1991). Given the inadequacy of the Commission's Findings, this Court cannot make a determination pursuant to Title 30 V.I.C. § 35. Consequently, this Court will remand this matter to the Commission on this issue, and direct the Commission to submit appropriate Findings within fifteen (15) days so that the Court may ascertain whether or not the findings of the Commission are arbitrary, capricious, or obtained through fraud.

Additionally, the Court is also concerned that there is no written policy or procedure or blueprint as to what factors or information the PSC reviews prior to the increase of the LEAC in existence. What the record reflects is the information that was reviewed while the PSC was in the process of determining whether to increase the LEAC. This is of concern because the PSC is a regulatory body and, as such, transparency and public confidence is essential. Such policy or procedure should be developed and assimilated among the populace.

## CONCLUSION

For the reasons set forth above, the following issues are dismissed: (1) WAPA has failed to comply with the legislative mandate that required it to have conducted a public hearing for comment within a reasonable time after the creation of the LEAC, and (2) the Virgin Islands Water and Power Authority (WAPA) petition for increase should not be based on the fluctuation of oil prices on the market and the refinancing of its $40 million loan. But, rather, WAPA's request should have been based on the below-market prices provided by HOVENSA, which is not indicated in its petition for an increase (based on the Third Extension and Amended Agreement). As to the third issue of whether "the PSC had insufficient information to consider the interest payments on WAPA's loans as a factor to increase the LEAC," the Court shall remand it to the Commission for an appropriate Finding.